IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2015 AUG 17  AM 8: 47

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

JESSICA PATE and J.L.C., a minor by and
through his parent and legal guardian, Jessica
Pate,

                    Plaintiffs,

-vs-                                                          Case No.  A-15-CA-375-SS

KARIN HARBERS; CHARLEEN HUNTER; and
BRENDA CHATMAN,
                    Defendants.

_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Plaintiffs' First Amended Complaint [#23]; Defendants' Opposed Motion to Dismiss

Plaintiffs' First Amended Complaint [#26]; Plaintiffs' Response [#30] thereto; and Defendants'

Reply [#31] in support.  Having reviewed the pleadings, the briefing of the parties, the relevant law,

and the case file as a whole, the Court now enters the following opinion and orders.

### Background

In this § 1983 case, Plaintiffs Jessica Pate, individually and on behalf of her child, J.L.C., and

J.L.C. sue Karin Harbers, Charleen Hunter, and Brenda Chatman, three Texas Department of Family

and Protective Services (Department) employees, in their individual capacities based on the May 9,

2013 removal of J.L.C. from Pate's custody and care.  Plaintiffs' general theory of constitutional

liability is that J.L.C. was not in imminent danger of physical or sexual abuse on May 9, 2013, and

therefore no exigent circumstances existed to reasonably justify J.L.C.'s removal.  Defendants move

to dismiss all claims in the First Amended Complaint on the basis of qualified immunity.  The relevant facts are as follows:

On May 7, 2013, the Department received an online report concerning potential abuse or neglect of J.L.C.  First Am. Compl. [#23] ¶ 13.  The report alleged Pate and J.L.C. were residing at the home of Pate's boyfriend, Tanner.  *Id.* ¶ 14.  J.L.C. was allegedly not being fed and the residence was unsafe due to exposed wiring and the accessibility of weapons.  *Id.* ¶ 14.  The Department's intake personnel classified the report a "Priority 2," meaning the Department's Brenham office was required to initiate an investigation within 72 hours.  *Id.* ¶ 13.

Hunter, the Department caseworker assigned to Pate's case, began her investigation on May 9, 2013.  *Id.* ¶ 17.  Members of the Brenham Police Department accompanied Hunter to the Tanner residence, where she found J.L.C. "in a diaper full of urine and with marks from a highlighter on him."  *Id.*  Police also questioned Tanner about cigar shavings they found while searching the house.  *Id.*  Tanner admitted to keeping marijuana in the master bedroom.  *Id.*

Hunter immediately called Pate, who was in College Station at the time.  *Id.* ¶ 18.  Pate agreed to meet Hunter at the Department's Brenham office and consented to having a family friend transport J.L.C. to that office.  *Id.*  Upon arrival, Pate confessed to Hunter she had recently used marijuana and agreed to take an oral swab drug test, which tested positive for amphetamines.  *Id.* ¶¶ 19, 20.  Pate requested to talk to Harbers, Hunter's supervisor, when it became apparent J.L.C. would be removed from her care.  *Id.* ¶ 21.  Harbers, who had been present during the interview, confirmed that J.L.C. would be subject to emergency removal.  *Id.*  Pate did not consent to J.L.C.'s removal at this time and the Department did not have a court order.  *Id.* ¶ 23.

This was not J.L.C.'s first removal.  In November 2011, Pate was hospitalized after intentionally cutting herself and threatening to commit suicide. *Id.* ¶¶ 9,10.  In conjunction with this episode, police found marijuana and drug paraphernalia in Pate's home. *Id.* ¶ 10.  After Pate was released from the hospital, Harbers, the Department caseworker at the time, permitted Pate to move with J.L.C. to live with her brother in Tyler, Texas. *Id.*  When complications arose in Tyler, Harbers removed J.L.C. from Pate's custody after learning Pate intended to take J.L.C. to Missouri to live with her father. *Id.*  A state court judge granted the Department temporary conservatorship over J.L.C. but permitted Pate to visit J.L.C. on a daily basis. *Id.* ¶ 12.  J.L.C. was eventually returned to Pate and the suit for protection of the child was dismissed. *Id.*

On May 10, 2013, the day following J.L.C.'s removal, the Department filed an *ex parte* suit for protection of J.L.C. in Washington County, Texas pursuant to Texas Family Code § 262.102(a), which permits the Department to seek a temporary court order giving it custody over a child on an emergency basis. *Id.* ¶ 22; Order for Protection of a Child [#8-2].[1]  Along with the petition, Hunter also submitted a sworn affidavit recounting her stated justification for removing J.L.C.[2]  According

---

[1] In reciting the facts, the Court also relies on two exhibits filed under seal by Defendants: (a) a May 10, 2013 state court order for protection [#8-2], and (b) a May 16, 2013 state court order following an adversary hearing [#8-3]. Although courts are generally prohibited from looking beyond the allegations of the complaint unless they convert the motion into one for summary judgment, an exception is made for documents referenced in and central to the complaint as well as matters of public record. *See, e.g.*, *Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386 (5th Cir. 2010) (citations omitted); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Because the exhibits fall into either category, and because there is no dispute as to their authenticity, they are properly considered on this motion. To the extent an exhibit contradicts an allegation in the complaint, the exhibit controls. *United States ex. rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

[2] Perhaps strategically, Plaintiffs fail to reference the existence of Hunter's affidavit in their First Amended Complaint and the parties dispute whether the Court can consider it without transforming Defendants' motion into a motion for summary judgment under Rule 56. While there is ample authority for considering Hunter's affidavit as part of the pleadings, *see Foley v. Texas Dep't. of Family & Protective Servs.*, No. 1:12-CV-270, 2012 WL 6803598, at *1 (E.D. Tex. Nov. 14, 2012) (considering a Department case worker affidavit and the transcript of a state court proceeding offered by plaintiffs in response to a motion to dismiss); *see also Walch v. Adjutant Gen.'s Dep't. of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008); *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993), the Court finds it is neither appropriate nor prudent to do so where the affidavit was not offered by Plaintiffs and was not specifically referenced in the complaint.

to Plaintiffs' complaint, the stated justification for J.L.C.'s removal was the combination of Pate's drug use and her history with the Department. *Id.* ¶ 25. Based on a finding of continuing danger to the physical health or safety of J.L.C., the court named the Department temporary managing conservator of J.L.C. and set an adversary hearing for May 16, 2013. Order for Protection of a Child [#8-2] ¶¶ 2, 3.1. After the May 16, 2013 adversary hearing, the state court again named the Department temporary managing conservator and granted Pate visitation rights. *Id.*; Temp. Order Following Adversary Hearing [#8-3] ¶ 3.

Pate appealed, petitioning the Texas Fourteenth Court of Appeals for a writ of mandamus ordering the Department to return J.L.C. First Am. Compl. [#23] ¶ 27. The appeals court granted Pate's petition, ordering J.L.C. to be returned. *See In re Pate*, 407 S.W.3d 416, 420 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The Department complied and ultimately dismissed its suit for protection of the child. First Am. Compl. [#23] ¶ 27.

In their First Amended Complaint, filed July 13, 2015, Plaintiffs claim Defendants' removal of J.L.C. from Pate's custody and care on May 9, 2013, without a court order, consent, or exigent circumstances constituted (1) an unlawful search and seizure in violation of J.L.C.'s Fourth Amendment rights, (2) an unlawful deprivation of Pate's fundamental liberty interest in the "care and custody of her child" and (3) a violation of both Pate and J.L.C.'s Fourteenth Amendment right to "family integrity." *Id.* ¶ 28. Plaintiffs allege no reasonable official in Hunter's position could have believed exigent circumstances existed on May 9, 2013, to justify the Department's removal of J.L.C. without Pate's consent, a warrant, or a court order because the circumstances existing at

---

Further, because the First Amended Complaint is deficient on its face, the Court declines to venture outside the pleadings to resolve Defendants' motion.

the time—J.L.C.'s wet diaper, the pen markings, and Pate's failed drug test—did not suggest J.L.C. was in imminent danger of physical or sexual abuse. *Id.* ¶ 25.  Further, Plaintiffs allege Harbers and Chatman, the Department officials in charge of overseeing the investigation, are liable in their capacity as supervisors. *Id.* ¶ 26.  Plaintiffs seek compensatory and punitive damages based on physical and emotional injury, pain and suffering, severe emotional and mental distress, and shock caused by Defendants' alleged constitutional violations. *Id.*

Defendants move to dismiss Plaintiffs' First Amended Complaint for failure to state a claim under Rule 12(b)(6) or, alternatively, on the basis of qualified immunity.

## Analysis

### I.       Legal Standards

### A.       Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction, and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Federal Rule of Civil Procedure 12(b)(1) allows a party to assert a lack of subject matter jurisdiction as a defense to suit.  The burden of establishing subject matter jurisdiction by a preponderance of the evidence rests with the party seeking to invoke it. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008).

In evaluating a challenge to subject matter jurisdiction, the Court is free to weigh the evidence and resolve factual disputes so that it may be satisfied jurisdiction is proper. *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).  In conducting its inquiry the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Id.*  The

Court must take the allegations in the complaint as true and draw all inferences in the plaintiff's favor. *Saraw P'ship v. United States*, 67 F.3d 567, 569 (5th Cir. 1995); *Garcia v. United States*, 776 F.2d 116, 117 (5th Cir. 1985). Dismissal is warranted if the plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject matter jurisdiction. *See Saraw*, 67 F.3d at 569; *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992).

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286

(1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Application

### A. Qualified Immunity

Defendants contend Plaintiffs' Fourth and Fourteenth Amendment claims against Hunter, Harbers, and Chatman in their individual capacities are due to be dismissed on the basis of qualified immunity. The doctrine of qualified immunity shields government officials, such as law enforcement officers, performing discretionary functions in the course of their official duties from liability as well as from suit. *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks omitted). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). A plaintiff bears the burden of negating a properly raised qualified immunity defense. *Id.*

The Supreme Court has articulated a two-part test for resolving government actors' claims of qualified immunity: a court must determine both (1) whether the public official's conduct violated an actual constitutional right, and (2) whether the public official's actions were "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (internal

quotation marks and citations omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Although the Supreme Court once required these questions be answered in order, and doing so is still advisable, courts have discretion to address either question first. *Pearson*, 555 U.S. at 236.

In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Unlike the notice pleading standard in Rule 8, the heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations." *Id.*; *see also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995).

### 1.    Fourth Amendment Unlawful Search and Seizure Claims

On behalf of J.L.C.,[3] Pate brings claims against Hunter for unlawful search and seizure in violation of the Fourth Amendment arising from J.L.C.'s May 9, 2013 removal. Plaintiffs allege Hunter's removal of J.L.C. without parental consent, a court order, or exigent circumstances violated J.L.C.'s right to be free from unreasonable searches and seizures. First. Am. Compl. [#23] ¶ 28. In response, Hunter argues under the circumstances a reasonable official would believe the seizure was justified due to exigent circumstances.

Before proceeding, it bears clarifying the scope of Plaintiffs' unlawful search and seizure claims. At the July 15, 2015 hearing, Plaintiffs conceded their theory of constitutional liability is predicated *only* on the May 9, 2013 emergency removal and *not* on any other search or seizure. Indeed, Plaintiffs admit Pate authorized a family friend to relocate J.L.C. to the Department's

---

[3] Plaintiffs concede Pate cannot bring claims against Hunter for an unlawful search and seizure in her individual capacity, *see* Pls.' Resp. [#30] at 7, and accordingly have amended their original Complaint to eliminate any claim Defendants' actions violated Pate's constitutional right to be free from unlawful searches and seizures.

Brenham office after lawfully entering the Tanner residence to investigate allegations of abuse or neglect. Further, Plaintiffs do not allege the May 10, 2013 state court Order for Protection of a Child or the May 16, 2013 Temporary Order Following Adversary Hearing violated J.L.C.'s constitutional rights. Accordingly, Plaintiffs' Fourth Amendment search and seizure claim is limited only to whether the May 9, 2013 emergency removal from the Brenham office was constitutionally deficient.

Under qualified immunity, the Court must first determine whether J.L.C. has asserted a violation of his constitutional rights. It is well established the Fourth Amendment safeguards against unreasonable seizures and applies to social workers conducting civil investigations. *See Gates v. Texas Dep't. of Protective & Regulatory Servs.*, 537 F.3d 404, 420 (5th Cir. 2008); *see also Wooley v. City of Baton Rouge*, 211 F.3d 913, 925 (5th Cir. 2000). A determination of whether a particular seizure is reasonable under the Fourth Amendment requires the Court to weigh "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Wooley*, 211 F.3d at 925 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

In the Fifth Circuit, government agency workers may not seize a child from his or her parents following an abuse or neglect investigation "absent a court order, parental consent, or exigent circumstances." *Gates*, 537 F.3d at 429; *see also Wernecke v. Garcia*, 591 F.3d 386, 397–98 (5th Cir. 2009). Because Hunter seized J.L.C. without Pate's consent or a court order, she is constitutionally liable for the removal if exigent circumstances did not exist. "Exigent circumstances in this context means that, based on the totality of the circumstances, there is reasonable cause to believe that the child is in imminent danger of physical or sexual abuse if he remains in his home."

*Gates*, 537 F.3d at 429.[4] The parties do not dispute this standard should be applied when evaluating the constitutionality of Hunter's actions.[5]

Whether exigent circumstances exist is "a flexible inquiry that considers all of the facts and circumstances with no one factor being dispositive." *Id.* In the context of a child abuse investigation, the Court should consider the following non-exclusive list of factors:

> whether there was time to obtain a court order . . .[,] the nature of the abuse (its severity, duration, and frequency), the strength of the evidence supporting the allegations of abuse, the risk that the parent will flee with the child, the possibility of less extreme solutions to the problem, and any harm to the child that might result from the removal.

*Id.* In ascertaining whether exigent circumstances existed to justify removal, the Court must focus on "information [that] was known to the [Department] employees making the decision to remove." *Id.* In *Wernecke v. Garcia*, the Fifth Circuit "adapted several [*Gates*] factors to fit the child endangerment context," to include "the nature of the danger facing the child (its severity, duration, frequency, and imminence), the strength of the evidence supporting immediate removal, and the presence or absence of parental supervision." 591 F.3d at 398 (citing *Gates*, 537 F.3d at 430).

*Wernecke* involved the removal of two boys, ages 5 and 14, from their father's custody absent consent or court order based on allegedly "deplorable" and "unsanitary" conditions in the children's home, including "medications and syringes sitting out on the kitchen counter" within reach of the

---

[4] The Texas Family Code largely tracks the Fourth Amendment standard, permitting a Department caseworker to take possession of a child without a court order if the facts would lead a person of ordinary prudence and caution to believe there is an immediate danger to the physical health or safety of the child. *See* Tex. Fam. Code Ann. § 262.104(a).

[5] The *Gates* court drew a distinction between the standard for evaluating exigency when removing children from their home and the standard applicable when removing children from other locations, such as schools. 537 F.3d at 432. Although the removal in this case occurred at the Department office, the parties agree the exigency standard when children are removed from a home should apply and they have not provided the Court with authority suggesting otherwise.

children. *Id.* at 389–90. The Werneckes sued the Department caseworker, Garcia, the Department, and various other defendants under § 1983 for violations of their Fourth Amendment rights, arguing no exigent circumstances existed to justify the emergency removal. *Id.* at 390. At summary judgment, Mr. Wernecke disputed Garcia's observations, characterizing the home as "cluttered" and explaining that although the medicine was within reach of the children, the pills were locked in plastic containers, the syringes had not been removed from their original packaging, and the boys were never around the supplies unsupervised. *Id.* at 398–99. Crediting Mr. Wernecke's recitation of the facts, the Fifth Circuit decided the "presence of medications and syringes in the home, in child-proof containers and under parental supervision" and "mere clutter in the home" would not lead a reasonable person to believe the children were in immediate danger if they remained at the residence. *Id.* at 399. Even considering several *Gates* factors counseling in favor of the reasonableness of the removal—there was no time to obtain an immediate court order, there was evidence the Werneckes were a flight risk, Garcia had unsuccessfully attempted to institute a safety plan and an alternative placement— the totality of the circumstances did not rise to the level of "truly exigent circumstances." *Id.* Accordingly, the Werneckes asserted a viable Fourth Amendment claim and Garcia was not entitled to qualified immunity. *Id.* at 401.

Considering the factors announced in *Gates* and adapted and applied in *Wernecke*, and paying "careful attention" to the information at Hunter's disposal at the time of removal, the Court turns to the case at bar. Here, there was significant evidence of recent illicit drug possession and use by both Pate and Tanner. Pate admitted to Hunter she used marijuana and subsequently tested positive for amphetamines while at the Department's Brenham office. When searching Tanner's home, police found cigar shavings and ultimately located marijuana in Tanner's possession. Further, Hunter was

aware of Pate's recent history of drug use and mental instability linked to J.L.C.'s removal approximately a year earlier, when Pate was hospitalized for cutting herself and threatening to commit suicide.  While Pate's present and past drug use alone may not be sufficient to rise to the level of exigency, there was corroborating information suggesting Pate's compromised judgment could jeopardize J.L.C.'s life and limb.  *See Roe v. Tex. Dep't. of Protective & Regulatory Servs.*, 299 F.3d 395, 407 (5th Cir. 2002).  For at least three days, Pate allowed J.L.C. to stay in Tanner's home, which, as alleged in the anonymous tip and corroborated by Hunter, was unsuitable for children. Pate ultimately chose to leave J.L.C. under Tanner's care while in College Station.  Tanner did not adequately supervise J.L.C.: Hunter found him in a diaper full of urine and with pen marks on his body.  As a two-year-old,[6] J.L.C. was wholly unable to fend for himself and relied on the sound judgment and vigilance of an adult.  Based on the facts alleged, it was reasonable for Hunter to have believed no such adult would be present if left in Pate's care.

In addition to the above-listed facts suggesting J.L.C. faced immediate harm if he remained with Pate, a number of other *Gates* factors weigh in favor of the reasonableness of removal.  First, while the facts do not allege what time J.L.C. was removed, the chronology of the day's events suggest obtaining a court order that day would not have been feasible.  Even if Hunter did have time to secure a court order that day, this one factor would not be dispositive.  *See Gates*, 537 F.3d at 429. Further, Plaintiffs fail to allege the existence of any less intrusive measures Hunter could have taken that evening.  For example, Plaintiffs fail to allege the existence of a suitable caregiver Hunter could

---

[6] Plaintiffs' First Amended Complaint wholly omits J.L.C.'s age.  This detail is highly relevant to the exigency analysis because age heavily influences the nature of the danger facing the child.  Common sense dictates a two-year-old child is far less able to protect himself from imminent danger than a twelve-year-old child.  Thus, the Court looks to the public record in this case to take notice of J.L.C.'s age at the time in reaching its conclusion.  *See* Temp. Order Following Adversary Hearing [#8-3] ¶ 5.

have placed J.L.C. with before filing her petition with the state court the following day.  At the hearing, Plaintiffs did not dispute Defendants' assertion Hunter contacted J.L.C.'s biological father, who was not available or able to supervise the child.  Finally, there was at least some evidence for Hunter to believe Pate was a flight risk.  J.L.C. was previously removed from Pate's care after Pate informed Harbers she would move to Missouri to live with her father.

Considering the totality of the facts and circumstances alleged in the complaint, and evaluating the facts in light of the "flexible inquiry" required by *Gates* and *Wernecke*, it was reasonable for Hunter to have believed J.L.C. was in danger of imminent physical neglect if he remained under Pate's care.[7]  Accordingly, the First Amended Complaint fails to allege Hunter violated J.L.C.'s constitutional rights.

Even if J.L.C. had stated a constitutional claim, Plaintiffs' claim could not survive the second prong of the qualified immunity analysis, which requires the Court to decide whether the right allegedly violated was clearly established at the time.  The central purpose of the "clearly established" inquiry is to determine whether "prior decisions gave reasonable warning that the conduct at issue violates constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).  "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533

---

[7] This finding does not contravene the state appellate court's decision in *In re Jessica Pate*, 407 S.W.3d 416, 420 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  First, the appellate applied Texas law to reach its conclusion, not the Fourth Amendment.  Second, Pate did not challenge the Department's May 9, 2013 removal, as she does here, but instead challenged the state court's decision not to return J.L.C. to her at the conclusion of the state court proceedings. *Id.* at 418.  Indeed,  the state appellate court only mandated the Department return J.L.C. after the hearing because it failed to "provide evidence that it made reasonable efforts to enable the child to return home" as it was required to do. *Id.* at 420.  There is no suggestion the state trial or appellate court ever found the initial seizure unlawful.

U.S. 194, 201 (2001). Thus, the Court must consider whether the law at the time put Hunter on notice that her actions violated the Fourth Amendment.

There can be no doubt the general constitutional rule here is clear: a government worker may not remove a child without a court order or parental consent unless exigent circumstances exist, meaning the worker reasonably believes the child faces imminent physical or sexual abuse. *See Gates*, 537 F.3d at 429. Prior to *Gates*, it was clearly established this rule was violated unless there was "at the very least, some evidence of imminent danger to a child." *Wernecke*, 591 F.3d at 400, (citing *Roe*, 299 F.3d at 407; *Wooley*, 211 F.3d at 925). In *Gates*, the court "articulated a standard for determining when some evidence of danger rises to the level of an emergency justifying immediate removal." *Id.* "While this 'flexible,' factor-based standard of *Gates* gives additional guidance to social workers," *id.*, Plaintiffs have not directed the court to an application of the standard on sufficiently similar facts so as to put Hunter on notice that the information available to her at the time she made the decision would violate J.L.C.'s rights. For example, neither *Gates* nor *Wernecke* dealt with a parent with a significant history of illicit drug abuse and mental instability and who, at the time, tested positive for amphetamines. While "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *see Hope v*, 536 U.S. at 741, there must be "sufficient indicia that the conduct in question was illegal." *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (citing *Freeman v. Gore*, 483 F.3d 404, 415 (5th Cir. 2007)). Considering there was at least some evidence of imminent danger to the child—J.L.C. was living in a location deemed unsuitable for children, he was found in a soiled diaper with pen marks on his body, Pate admitted to using marijuana and tested positive for amphetamines, the child had been entrusted to an unsuitable caregiver, Pate's history of mental instability and drug use—and

-14-

considering the existence of other *Gates* factors weighing in favor of removal—insufficient time to obtain a court order, no indication an alternative caregiver was available, evidence Pate may flee with the child—it cannot be said "*all* reasonable officials in [Hunter's] circumstances would have known that [removing J.L.C.] violated the United States Constitution . . . ." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). Accordingly, even if there was a constitutional violation, qualified immunity would protect Hunter from her reasonable mistake.

### 2.    Fourteenth Amendment Claims

In addition to the Fourth Amendment claims, Plaintiffs argue the Department's seizure of J.L.C. under non-exigent circumstances violated (a) Pate's fundamental liberty interest in the care and custody of J.L.C., and (b) both Pate and J.L.C.'s right to family integrity, both of which are protected by the Fourteenth Amendment.

First, it is clear Pate has a "fundamental liberty interest . . . in the care, custody, and management of [her] child . . ." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). In the Fifth Circuit, the procedural safeguards under the Fourth Amendment are sufficient to protect the procedural due process rights and liberty interest in the care and custody of a child if the claims arise from the same underlying facts. *See Gates*, 537 F.3d at 434–35; *Wernecke*, 591 F.3d at 391 n.7. Here, Plaintiffs' Fourth Amendment claims and Fourteenth Amendment claims are both based on J.L.C.'s removal. Accordingly, for the same reasons Plaintiffs' Fourth Amendment claims are due to be dismissed, so too are Plaintiff's Fourteenth Amendment care and custody claims.[8]

---

[8] As the Department officials had done in *Gates*, Hunter complied with Texas law requiring she petition the court for a hearing the day after J.L.C.'s emergency removal. *See* TEX. FAM. CODE ANN. § 262.105. To the extent Plaintiffs argue Hunter's actions violated their procedural due process rights, the Court finds "adequate procedural due process was given." *Gates*, 537 F.3d 404, 435.

To the extent Plaintiffs assert a separate Fourteenth Amendment claim based on the violation of Pate and J.L.C.'s right to family integrity, this claim too fails. The Fourteenth Amendment Due Process Clause protects the right to family integrity. *See Morris v. Dearborne*, 181 F.3d 657, 555 (5th Cir. 1999). This right is held by both the child and the parents. *Wooley*, 211 F.3d at 923. Plaintiffs contend the Department deprived Pate and J.L.C. of their right to family integrity when Hunter removed J.L.C. from Pate's custody and care. First Am. Compl. [#23] ¶ 28. In cases involving the temporary removal of children from their parents,

> governmental interference with the right of family integrity is properly analyzed by placing them, on a case by case basis, along a continuum between the state's clear interest in protecting children and the family's clear interest in privacy. When the facts of a case place it in the center of the continuum where the two interests overlap and create tension, the right to family integrity may properly be characterized as nebulous, and thus a defendant may claim the protection of qualified immunity.

*Morris*, 181 F.3d at 671. The Department had a clear interest in protecting J.L.C. from imminent physical harm that justified it in temporarily removing the child from Pate's care. Accordingly, Pate and J.L.C.'s right is best characterized as "nebulous" and Hunter is entitled to qualified immunity.

### 3.      Supervisory Claims

Finally, Plaintiffs contend Harbers and Chatman are constitutionally liable for J.L.C.'s removal in their capacity as Hunter's supervisors. Plaintiffs allege Harbers, Hunter's direct supervisor, was "directly and personally involved" in J.L.C.'s removal and "acted as the conduit" between Hunter and Chatman, the Department's program director. First. Am. Compl. [#23] ¶ 26. Plaintiffs further allege Chatman was made "aware of the factual information" and "either made or approved of the decision to remove J.L.C." knowing no exigent circumstances existed to justify the removal. *Id.* Again, Defendants argue these claims should be dismissed under qualified immunity.

-16-

Because supervisors are only liable for their own misconduct, supervisory officials cannot be held liable under § 1983 on the basis of vicarious or *respondeat superior* liability. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). "A supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates*, 537 F.3d at 435.[9] "It is facially evident that this test *cannot* be met if there is no underlying constitutional violation." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 425 (5th Cir. 2006) (emphasis added) (citing *Breaux v. City of Garland*, 205 F.3d 105, 161 (5th Cir. 2000) ("[T]he fact that Plaintiff's First Amendment rights were not actually infringed exonerates [his supervisors] from supervisory liability.")). Indeed, it is well-settled supervisor liability does not exist where there is not an underlying constitutional violation. *See, e.g.*, *Becerra v. Asher*, 105 F.3d 1042, 1047–48; *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392–93 (5th Cir. 1999). Even assuming *arguendo* the allegations in Plaintiffs First Amended Complaint establish a colorable claim the supervisors participated in an allegedly unconstitutional act, Rule 12(b)(6) dismissal is nonetheless proper. *See Rios*, 444 F.3d at 425 (citing cases). Because Plaintiffs have failed to state a facially plausible constitutional violation by Hunter, there can be no supervisor liability on the part of Harbers or Chatman.

---

[9] Plaintiffs do not allege Harbers or Chatman's implementation of facially unconstitutional policy resulted in J.L.C.'s unlawful removal. Rather, Plaintiffs' theory of supervisory liability rests solely on the officials' direct participation in Hunter's unconstitutional conduct.

## Conclusion

Accordingly,

IT IS ORDERED that Defendants Charleen Hunter, Karin Harbers, and Brenda Chatman's Rule 12(b)(6) Motion to Dismiss [#26] is GRANTED.

SIGNED this the _14th_ day of August 2015.

SAM SPARKS
UNITED STATES DISTRICT JUDGE